# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

NATIONAL COUNCIL OF ARCHITECTURAL
REGISTRATION BOARDS,

    *Plaintiff,*

    v.

SANDRA LUCE,    MAGISTRATE JUDGE Alexander

    *Defendant.*

04 10583 EFH

CIVIL ACTION NO.: 04-_____

RECEIPT # _____ 59837
AMOUNT $ _____ 150.00
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____ 3/25/04

## **COMPLAINT**

### **Introduction**

Plaintiff, the National Council of Architectural Registration Boards ("NCARB"),

seeks injunctive relief and damages against defendant Sandra Luce ("Ms. Luce"),

following Ms. Luce's unauthorized disclosure, publication, and dissemination of

confidential examination questions from the Architect Registration Examination

("ARE"). The ARE is a nationally administered examination taken by every candidate

who seeks to become a registered architect in the United States and Canada, and the test

is an integral element in the process of licensing architects and protecting the public's

health, safety and welfare. All states and other jurisdictions permit only registered

architects to design substantial buildings.

    Ms. Luce took a division of the ARE on March 5, 2004, at a test center in Boston,

Massachusetts. The next day, she published many of the questions from her

multiple-choice examination, by placing close paraphrases of the questions on a publicly

accessible internet website, and publicizing the existence and location of the confidential

questions on an internet "bulletin board" that is frequented by ARE candidates.
Subsequently, on information and belief, Ms. Luce may have also distributed the
questions via e-mail to other test candidates who contacted her through the internet
bulletin board.

Ms. Luce's publication of examination questions from the ARE is a breach of a
confidentiality agreement she entered into with NCARB, in which she agreed not to
disclose questions from the ARE. In addition, her publication of ARE questions has
infringed on NCARB's copyright of the ARE. Furthermore, Ms. Luce's conduct has
threatened to compromise the regulatory and public confidence in an examination that is
integral to the registration of architects, by assuring that only persons with the requisite
knowledge, skill, and ability become registered and thus permitted to practice
architecture.

In addition to awarding NCARB its monetary damages, NCARB asks this Court
to preliminarily and permanently enjoin Ms. Luce from further disclosing, publicizing or
disseminating confidential examination questions from the ARE.

## Parties

1.      Plaintiff NCARB is a not-for-profit corporation organized under the laws
of Iowa. It has a principal office in Washington, D.C.

2.      Defendant Sandra Luce is an individual with a residence at 85 Clay Street,
Unit A, Cambridge, Massachusetts.

## Jurisdiction and Venue

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332,
as there is complete diversity between NCARB and Ms. Luce, and the amount in
controversy exceeds $75,000, exclusive of costs or interest.

2

4.    This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1338, as this is an action to enforce NCARB's copyrights.

5.    This Court also has jurisdiction over this action pursuant to its pendant jurisdiction.

6.    Venue is proper in this Court under and pursuant to 28 U.S.C. § 1391, as (1) Ms. Luce resides in this judicial district, and (2) a substantial part of the events giving rise to the claim occurred in this judicial district.

### Background

7.    NCARB is a federation of the architect registration boards of all fifty states, the District of Columbia, and four U.S. territories (Guam, the Northern Mariana Islands, Puerto Rico, and the Virgin Islands). NCARB's member registration boards are the governmental entities that license and regulate the practice of architecture in each jurisdiction in the nation. The registration of architects is one means by which these governmental registration boards fulfill their mission to safeguard the public health, safety and welfare.

8.    NCARB develops and recommends standards to be required of an applicant for architectural registration; develops and recommends standards regulating the practice of architecture; and provides a process to member boards for certifying the qualifications of an architect for registration, thereby facilitating reciprocity of registrations among its member boards.

9.    Among other roles, NCARB develops and administers the ARE.

10.    The ARE examines registration candidates for their knowledge, skills and abilities to competently practice architecture on their own. The ARE concentrates on the knowledge, skills and abilities that affect the public health, safety and welfare. The intent

of the examination is to evaluate a candidate's competence to protect the public by providing the architectural services of pre-design, site design, building design, building systems and construction documents and services as they relate to social, cultural, natural and physical forces, and to other related external constraints.

11.     The ARE is divided into nine separate sections, or "divisions." Each division of the ARE is based on a logical grouping of tasks that comprise the practice of architecture. The divisions are administered independently, on different days, and often over a period of several months and years. In 2003, 11,934 different candidates for registration in the United States and Canada took 34,032 divisions of the ARE.

12.     There are six multiple-choice divisions of the ARE: Pre-Design, General Structures, Lateral Forces, Mechanical & Electrical Systems, Building Design/Materials & Methods, and Construction Documents & Services. There are also three "graphic" divisions of the ARE: Site Planning, Building Planning, and Building Technology.

13.     An applicant must pass all divisions of the ARE to be registered by an NCARB member board as an architect.

14.     Each multiple-choice division of the current ARE has between 75-115 individual multiple-choice questions.

15.     Each of the multiple-choice divisions is subject to a maximum time limit for completing the examination, between 2-3 hours, depending on the division. Likewise, each graphic division is also subject to a time limit, between 3¾-6 hours, depending on the division.

16.     Questions for the ARE are developed by NCARB, its exam-writing committees of practicing architects and NCARB's member boards, with the help of

4

professional testing consultants. The development and quality control of suitable, appropriate exam questions is a complicated, time consuming and expensive process. The different ARE divisions are constructed from a "pool" of questions for each particular division that have been developed and approved by NCARB and its professional testing consultants.

17.    All questions for the ARE are kept in strict confidence. In addition, the ARE, its questions and all related material are copyrighted by NCARB. ARE questions are registered as confidential "secure tests."

18.    The ARE is administered by a testing consultant. The ARE is administered exclusively on computers at a network of test centers across the United States, its territories and Canada.

19.    In order to take the ARE, candidates must first be made eligible by the member board where they wish to become licensed.

20.    Once eligible, candidates receive an "Authorization to Test" and the ARE Guidelines. Among other information, the ARE Guidelines inform candidates that, "All NCARB tests are held in strict security and confidence. Before beginning your test, you will be required to accept a confidentiality statement, which prohibits any disclosure of exam content."

21.    Once eligible, registration candidates make take any division of the ARE they choose, when they choose, in whatever order they choose. Registration candidates schedule an examination at their convenience, at one of many testing centers throughout the United States and in other countries. Registration candidates pay an examination fee for each ARE division that they take.

~BOST1:297330.v1
308324-4

22.    To maintain the integrity of the ARE and the confidentiality of the exam questions, specific security measures are enforced at all testing centers.  For example:

- candidates must present positive identification in the form of a passport, driver's license, national i.d., or military i.d., or multiple forms of identification from a specified list;

- no test material can be copied or removed from the test center;

- candidates are required to sign the test center registration log each time they enter or leave the testing room;

- candidates are not allowed to refer to extraneous notes or reference materials during administration of the exam, other than certain specific references materials provided to the examinees in certain divisions;

- candidates are observed at all times while taking the examination, which may include direct observation by test center staff, as well as audio and video recording of the examination session;

- candidates are required to leave all personal belongings outside the testing room, including bags and any communication devices of any kind;

- candidates are escorted to their workstations by test administration personnel;

- candidates are not allowed to leave their workstations without permission from test administrators; and

- candidates are prohibited from removing or attempting to remove scratch paper or notes from the testing room.

6

23.    To further ensure the integrity of the ARE and the examination and registration processes, each exam candidate is notified of the confidential and proprietary nature of the ARE test materials. Specifically, at the beginning of each exam division of the ARE, a computer screen informs all examinees that "[a]ll test questions contained in this program are the unpublished, confidential and proprietary materials of the National Council of Architectural Registration Boards. No reproduction or disclosure is permitted." This same screen informs the examinee that portions of the current exam have been copyrighted by NCARB, with all rights reserved. (The "Copyright and Confidentiality Warning.")

24.    To further ensure the integrity of the ARE and the examination and registration processes, each examination candidate is required to enter into a Confidentiality Agreement with NCARB, which specifically prohibits disclosure of exam content. The Confidentiality Agreement appears prominently on each examinee's computer monitor, prior to beginning each division of the examination. It states as follows:

> *I understand that the content of this examination is confidential. I agree that I will not divulge any questions on this examination to any individual or entity. I understand that the unauthorized possession, reproduction, or disclosure of any examination materials, including the nature or content of examination questions, before, during or after the examination is in violation of law. A violation of this type can result in a civil liability and/or disciplinary action by my Board of Architecture.*

(the "Confidentiality Agreement").

25.    The examinee cannot reach the examination questions and begin the examination without agreeing to the Confidentiality Agreement. On the same screen, below the Confidentiality Agreement, is a button labeled "NEXT," which takes the

7

examinee to the next screen in the examination. The Confidentiality Agreement screen states that "Clicking on the 'NEXT' button signifies that you have read this Confidentiality Agreement and pledge to keep all contents of this examination confidential." Unless the candidate clicks the "NEXT" button, the candidate cannot proceed to the exam questions.

26.    Ms. Luce made an appointment to take the General Structures division of the ARE, at a test center in Boston, Massachusetts, on March 5, 2004. She paid an examination fee of $92.00.

27.    On March 5, 2004, Ms. Luce arrived at the test center and, after presenting her identification, was escorted to an exam workstation.

28.    At the start of the exam, prior to receiving any examination questions, Ms. Luce was provided with the Copyright and Confidentiality Warning.

29.    Next, Ms. Luce was asked to accept the Confidentiality Agreement, by clicking the "NEXT" button on the confidentiality screen, which she did.

30.    Ms. Luce then proceeded to complete the General Structures division of the ARE. The General Structures division currently contains 85 multiple-choice questions.

31.    Immediately after finishing the exam and leaving the test center, or shortly thereafter, Ms. Luce went to a personal computer and transcribed 46 exam questions into a word processing document (the "ARE Questions Document"). Many of the 46 questions in the ARE Questions Document are close paraphrases -- sometimes nearly verbatim -- of the questions from the General Structures division of the ARE that Ms. Luce took on March 5, 2004.

8

32.    On the morning of March 6, 2004, less than 24 hours after taking the exam, Ms. Luce posted the ARE Questions Document on a publicly accessible internet website, with the address of "aretest@webbcomm.biz." This website was created for the apparent purpose of sharing information about the ARE among test candidates.

33.    Also on the morning of March 6, 2004, Luce used an internet forum, or internet "bulletin board," that was established for the apparent purpose of sharing information about the ARE, and she posted one or more messages publicizing the existence and location of the ARE Questions Document and encouraging other exam candidates to use the document to prepare for the General Structures division of the ARE.

34.    As a result of Ms. Luce publicizing its existence and location, an unknown number of ARE test candidates, which NCARB believes to be several, downloaded the ARE Questions Document that Ms. Luce posted at "aretest@webbcomm.biz." On information and belief, these ARE candidates themselves may have further disseminated the ARE Questions Document to others.

35.    On information and belief, Ms. Luce may have also distributed the ARE Questions Document through e-mail to other ARE candidates who contacted her through the ARE bulletin board.

36.    On March 10, 2004, at the express request of NCARB, the ARE Questions Document was removed from "aretest@webbcomm.biz."

37.    By disclosing confidential examination questions to other test candidates, many of whom have yet to take the General Structures division of the ARE, Ms. Luce has harmed the integrity of the ARE by giving a limited number of test candidates an unfair advantage. Further disclosure by Ms. Luce to additional candidates will cause irreparable

9

harm to NCARB by undermining the integrity of the General Structures division of the ARE and could require that it be withdrawn until new questions can be written and pre-tested for reliability. Having to withdraw a division of the ARE while it is being re-written will also work irreparable harm on the thousands of candidates needing to successfully complete the ARE and become registered in their states.

## COUNT I
(Copyright Infringement)

38.    NCARB restates and incorporates herein the allegations of Paragraphs 1-37 above.

39.    NCARB owns all proprietary rights, including copyrights, in the ARE, including the examination, the exam questions, instructions and related materials.

40.    The ARE consists of original material prepared by NCARB, its exam-writing committees of practicing architects and NCARB's member boards, and the material is copyrighted under the laws of the United States.

41.    NCARB has registered all ARE exams and exam questions with the Register of Copyrights. ARE exam questions, including the questions from the General Structures division, are registered as confidential "secure tests." At all relevant times, NCARB has been the sole owner of all right, title, and interest in the ARE copyrights, including the exclusive right to copy, distribute and prepare derivative works based on the ARE.

42.    At no time was Ms. Luce licensed or otherwise authorized to publish or reproduce any questions from the ARE.

10

43.    Ms. Luce's actions, as described above, constitute copyright infringement, in violation of NCARB's rights under the Copyright Act.

44.    As a result of Ms. Luce's wrongful conduct, NCARB has been harmed and NCARB continues to face a risk of further irreparable harm.

## COUNT II
(Breach of Contract)

45.    NCARB restates and incorporates herein the allegations of Paragraphs 1-44 above.

46.    Ms. Luce entered into a contract with NCARB.  Specifically, NCARB and its agents made the General Structures division of the ARE available to Ms. Luce, agreed to administer the test to Ms. Luce, and agreed to report her test scores to her registration board, in consideration of Ms. Luce's examination fee and her promise to maintain the confidentiality of all ARE questions and to refrain from disclosing or reproducing exam questions.

47.    Ms. Luce breached the contract described above by failing to maintain the confidentiality of the ARE and by divulging and publicizing confidential exam questions.

48.    As a result of Ms. Luce's wrongful conduct, NCARB has been harmed and NCARB continues to face a risk of further irreparable harm.

49.    Furthermore, Ms. Luce's wrongful conduct poses a threat to regulatory and public confidence in the registration process that NCARB and its member boards use to protect the public health, safety and welfare.

11

## COUNT III
(Fraud)

50.    NCARB restates and incorporates herein the allegations of Paragraphs 1-49 above.

51.    Ms. Luce falsely represented to NCARB that she would maintain the confidentiality of the ARE and refrain from disclosing examination questions.

52.    Ms. Luce's misrepresentations were material.  NCARB and its agents would not have permitted Ms. Luce to take the General Structures division of the ARE but for Ms. Luce's false representation that she would maintain the confidentiality of the ARE.

53.    Ms. Luce's misrepresentations were made knowingly, with the intent to deceive NCARB and its agents.

54.    NCARB and its agents justifiably relied on Ms. Luce's misrepresentations, in giving Ms. Luce access to the ARE's General Structures division.

55.    As a result of Ms. Luce's wrongful conduct, NCARB has been harmed and NCARB continues to face a risk of further irreparable harm.

56.    Furthermore, Ms. Luce's actions pose a threat to public confidence in the registration process that NCARB and its member boards use to protect the public health, safety and welfare.

~BOST1:297330.v1
308324-4

Dated:  March 25, 2004